And we'll call our final case of the session, United States v. Williams, appellate number 13-4700. Good afternoon. May it please the court, Alison Grail from the Office of the Federal Appellate Defender for the District of New Jersey. On behalf of Justin Williams, I'd like to reserve three minutes from rebuttal. That will be granted. The jury here is not required to find a causal connection between force, threats of force, fraud or coercion in the Commercial Sex Act. The essential element in the sex trafficking case with an adult is the victim. The jury instruction, what you've just talked about, and I'm familiar with the elements that were recited by the district court, but don't we have to look more beyond the elements and look at the charge in its entirety, where the judge does discuss the need for causation, discusses it both before and after the elements, as well as when describing the verdict sheet. Why isn't that sufficient for the verdict, for the jury instruction to be sufficient? I'm glad that you only focused on the jury instructions and not the arguments of counsel because that is the totality of what this court should consider. It's not sufficient because the court repeated the error instead of correcting the error by first charging what the statute required and then saying, and this is how you get there. You get there by separating the elements. It's not sufficient in this case when the causal connection is what makes this a federal crime with severe penalties to not look at the elements as a very important part of the charge. The problem with the elements, there are two times that the court charged the elements on pages 616 to 617 and 619 to 620. The first time with the third element, the judge said he used the would-be cause language that's in dispute. The second time on 619 to 620, when the judge discussed the third element, there was no word cause at all. Cause was completely written out. He said the defendant knew that the victim would be engaged in a commercial sex act. The instructions as they go along get further and further from the causal connection. This is not enough to say that from the general charge that a causal connection is required by the statute. And we know what the causal language that the judge used in the third element is from. We know that it's from the minor charge and it doesn't have the significance that we're giving it today to reference back to the second element. The third element is used in the statute. The will-be cause language is used to permit liability before a commercial sex act occurs. That is the will-be cause language. A victim can drive a minor to a commercial sex act, leave them at the hotel door, and then an undercover is there. That would permit liability under the would-be cause language. It's a reference back to the predicate acts from the first element. It's not obvious or implicit that the instructions that were used here, and I'm focusing on the elements because that is what the jury is instructed, is how we go about finding liability. But we are duty-bound to read the instructions in their entirety. And you've identified that before the elements were given, what the judge did was consistent with the statute. And then later in the charge and a number of times, particularly when he's reviewing the verdict sheet with the ladies and gentlemen in the jury, he repeats a number of times that – I'm just going to do one moment. He talks about the fact that it's got to be – just one minute. I've got it right here. He talks about the fact – you'll see language that says he's alleged to have committed the offense of sex trafficking by force. And he's describing to the ladies and gentlemen in the jury the verdict sheet. And this is all within the context of the full charge. So the jury is being constantly reminded that this is sex trafficking by force. It's got to be – you've got to cause this commercial act by a forcible act. And so how – this seems to save the – if we assume there was an – I'm not saying there is, but if we take your argument, your argument asks us to focus on three lines within the entire charge. But if we look at the charge in totality, the causal connection is repeated, albeit in slightly different ways. So your Honor is suggesting that the by force in the jury verdict is enough to – I'm talking about what the judge said about the verdict sheet. I'm not even talking about the verdict sheet itself. I'm talking about – the judge narrates a lot about the verdict sheet, as you probably have heard a number of times the judges will do, is repeat the jury instruction. And he was walking the jurors through sort of the thought trace. But each time he repeated sex trafficking by force. And why isn't that, together with what the judge said before the elements were given and after the elements were given, sufficient in the totality to ensure the jury made the proper finding? It's not sufficient, particularly when we get to the verdict sheet, because the whole focus of that was on an irrelevant part of the statute, which was the two different ways that a defendant could commit the first element of the offense. And so there was a lot of talk. Certainly there was many times that the word cause was used. The indictment was read. The statute was read. But when the jury is tasked with the specific elements, it's not given exactly what it needs. And the verdict piece, I went into a lot of briefing on it. It was very confusing. I think that the totality of that language does not clear up the situation because the jury – Well, that's going to a different element. That's going to the means by which the statute was violated and the jury was told that. Sure, and the jury found both of those elements. Right. But a lot of time was spent on exactly what the verdict sheet would require. There are verdict sheets that have the exact language of the statute. But here we're focusing on whether the jury instructions in their totality are sufficient to find that any error, if there even was one, was harmless. That's really what my questions were going to. Their position is that it's still not sufficient? It's not sufficient because we are told this is what you have to do and then this is how you do it. Two different times, this is how you do it. And so the jury is told about a causal connection and then instructed, this is the way that you find it without the causal connection. The verdict sheet, that had to find the violence and to find the sex act. But there was no finding of causation required. On the verdict sheet, there was not. There was actually just sex trafficking by force, guilty or not guilty, and then it got into the two different ways that the first element could be met. And the ways were, did he do it by way of harboring or profiting from it? Right. There was no inquiry about the existence of force fraud or any of that stuff? There wasn't. And, of course, the verdict sheet could have had the specific language of the statute. A lot of verdict sheets do have that, you know, to the defendant knowing, no, a reckless disregard of the force, threats of force, et cetera, would be used to cause. That's a standard instruction. Was there an objection to the verdict sheet? There was no objection to the verdict sheet. It also was not the verdict sheet that the government had initially proposed. The judge said, I'm not saying I'm going to give you the exact charge that you want. I was asking about the verdict sheet. There was no objection to it, but it was also not what had originally been proposed. It was different, and there was no objection afterwards. I get it. Okay. But in the end, this is a very serious offense and very severe consequences. And this is the time when the explicit nature of what makes it a federal offense is at its forefront. We can look at the totality and say there were some times when the judge got it right, some times when the judge got it wrong. But in the end, the jury is hearing a lot of information, and the elements are what the jury is told, this is what you find, you go down the line. If you object to the charge, did you spell the judge? You never charged causation? There was no specific objection with the word causation in it. There was a different proposed set of instructions and a colloquy about it. I understand there were different instructions requested, but the judge gave a charge. And after the judge gave a charge, was there an objection to the charge? Because that goes to the standard of review. It does. There was no objection to the charge afterwards. I don't think that Russell or Rule 30D requires an objection after the jury instruction is given. It's about timeliness and specificity. The defense attorney did propose the proper instructions, and there was a colloquy about it. I understand if the judge could tell the lawyers, this is what I'm going to charge, before the judge charges it, and could inquire as to whether there was an objection to what he was going to charge. Did that happen? The judge did inquire afterwards if there was an objection. The defense counsel wondered if knowingly was different than knowing, and the judge said it doesn't matter. So that was the only objection after the instruction was given. So we're dealing with a plenary situation. I don't agree that it's a plenary situation. This is a constructive amendment of the indictment, and I do think that if this court finds error, it would be reversible under either a plenary or a harmless error standard. If we are saying that the only difference in this case would have been that the defense counsel had to object after the instruction, that would be elevating formal over substance in this case, where the judge specifically said, I'm not giving you word for word instructions. I'm giving you the gist. That's not explicit, but that's what the judge was saying. And we know in the post-verdict ruling, this is on A847, the judge re-reviewed the jury instructions and again said it was sufficient to find the causal connection. So we know where the judge was going to require the additional objection doesn't add anything in this case. Regardless, if this is error, this is a constructive amendment of the indictment. That is, it modifies an essential term of the indictment in the jury instructions so that the jury could find liability on a basis more broad than the grand jury found it. That is per se reversible error under a harmless error standard and presumed prejudicial in the plain error case. And I don't think that the government can rebut the presumption of prejudice here. Well, considering that we might find that we can consider harmless error, isn't there so much evidence of force and brutality that the jury, even had it been correctly instructed, any reasonable juror would have concluded that the force caused the sex acts, at least some of the sex acts? There's certainly no question that these were deplorable conditions that the women were operating under. There's certainly no question that there was corroborated testimony of brutality. The question of cause was what was in dispute in the case. The relationship that Mr. Williams had with the women. And Talia, in effect, testified that she was forced to go out and earn more money by force by the defendant when she didn't want to. Isn't that? That is not correct. There was no direct testimony of force. But the sequence was there. The temporal link, which was the reason for denying the Rule 29 motion, was certainly something that the judge found. Temporal is not the same as causal. But the jury could infer that, and that's what we have to defer to if we're moving on to sufficiency, right? And so for sufficiency, this court still has to look at the totality of the circumstances. And the dynamics of the relationship. These were adults. There's no dispute that the first acts of prostitution were not in violation of the statute. So it's not the typical case. But causation was in dispute, and it was the only thing in dispute. It was by not permitting the jury to find causation, the judge essentially nullified the entire defense. You said something before that surprised me. You said that we can't take into account the arguments of the attorneys to the jury. And I understand, of course, that that doesn't constitute the charge. But I think we have cases where there's an argument about the charge where we have made reference to what the attorneys said. Do you think we can't consider that? The jury is instructed to follow the directions of the judge, and we assume that the jury follows those instructions. And the judge specifically said in this case that arguments of counsel are not the law. So I'm not sure what those cases are, but I would say if we're looking just at this case and what the jury was specifically instructed to do, they were told arguments of counsel would not control. Thank you. But no one ever told the jury that causation is not an issue in this case, did they? I mean, the situation maybe was ambiguous, but causation was certainly mentioned in it. And then there were arguments about causation. Absolutely. Causation was the case. And causation is what makes this a federal offense when you have adult victims. The jury was told, of course, that causation wasn't an issue when the judge separated the elements. Okay. Counsel, we'll have you on rebuttal tonight. May I please the court? Good afternoon, counsel. My name is Michelle Morgan. I'm here on behalf of the United States. I would first like to address the government's position that plain error is the proper standard of review here. In this case, the court indicated that it was going to provide the four-element instruction that the government had submitted, acknowledging that counsel had submitted a three-element instruction, and the court asked if counsel was in agreement. Counsel said he understood that the elements would be incorporated within the four-element instruction, and he withdrew any objection that he had. Then when the instructions were, in fact, given, he did not object. I think that's covered. What's the name of the case? Suarez? Is that? Yeah. That at the end of the instructions, when an objection would potentially cure the whole problem, if the objection is not made, then the review is for plain error. That's correct, Your Honor. And defense counsel in their reply brief relied heavily on United States v. Russell for its language regarding raising the issue, but I think it's important to look at subsequent decisions by this court, for example, United States v. Baldini and United States v. Jake. In both of those cases, the court emphasized that the objection has to be sufficiently precise, and it has to be a clearly articulated objection. If anything, the only thing that defense counsel clearly articulated was the quote-unquote financial aspect. It's unclear whether he was referring to the interstate commerce element or he was referring to the benefits financially language in 1591A2, but in any event, that's the only thing he addressed was specificity, and then he indicated explicitly to the court that he was withdrawing any objection to the four elements. And given that the entire case was about causation from start to finish and that was made clear at every point in the case, the fact that he did not object when he heard the four elements read is significant and I believe leads us to a plain error analysis. And when we conduct that plain error analysis, it is very clear that these instructions fairly and adequately submitted the issues to the jury. First of all, if you look at the elements themselves that the court read, the third element in question contains the word cause, would be caused to engage in a commercial sex act. It didn't say would engage in a commercial sex act. It said would be caused, and the word cause inherently suggests a compulsion outside of oneself to act. And it was clear that the predicate act of causation was what just preceded it, the force, fraud, or coercion. In addition, within discussing the elements themselves in the second paragraph of that discussion, which I quoted on page 24 of the government's brief, the court explicitly said the use of force would be used to cause a person to engage in a commercial sex act. So even when discussing the elements, the district court made it clear that there had to be a causal connection between the force, fraud, or coercion and the commercial sex act. Erica testified that she was never forced to perform any sex act, that she was a prostitute before. She loved the defendant and that she was happy to work for him even if he did beat her up all the time. When you don't have any corroboration by the person performing the sex act, isn't it particularly important that causation be properly presented to the jury? And I believe it was in this case, Your Honor. While Erica did testify on cross-examination the day after her direct that she wasn't forced, that she acted voluntarily, that she did it of her own free will, for example, on direct examination the prior day, she explained that she was punched, kicked, slapped, choked, beaten on a weekly basis, that she had her arms sliced with a hair clipper, that she witnessed the brutal beatings of other women, including stomping a woman on the floor, slamming her head into a door, being whipped with a telephone cord, and that after many of these events, the women were told to go back out and earn their quota and continue prostituting. The other witnesses in the case corroborated the beatings of Erica and the public beatings of other people in their presence. And all of the witnesses testified that the defendant kept all of their money. So basically, they were being repeatedly beaten or witnessing beatings and weren't getting any money out of the situation. And the jury reasonably inferred, despite Erica's statements on cross-examination, that this was a compulsive situation, that she was being forced, that she was being coerced. What about the argument that there's an implicit amendment of the indictment by not instructing on compulsion? Your Honor, the jury was constricted on compulsion and causation, and we disagree that there was any constructive amendment to the indictment. You not only have the courts express discussion of causation when describing the elements, you not only had the court defining coercion and defining substantial harm,  but you also have the court reading the superseding indictment, which contained the causation language, sending it back with the jury, reading the statute on three separate occasions, which contained the causation language. Furthermore, you have in opening both the government and the defense saying this case is about one thing. It's about whether forced violence and coercion caused these women to engage in prostitution. But what about the fact that the jury's told arguments at counsel are all fine, but you can't use them for the law? You've got to follow the instructions. So how can we lean on that fact to cure the jury instructions, assuming there was an error? We don't necessarily need to lean on it, Your Honor, because the instructions were so clear, because the instructions reiterated the issue of causation, because as Your Honor pointed out, the judge kept referring to sex trafficking by force. That was the element needed to make it be sex trafficking in this case because no minors were involved. But I think the point that Judge Greenberg made is important. It's not as if we stood in front of the jury and said, don't worry about the causation, that's not an issue here. It was the crux of the case, and defense counsel even admits it in their own brief. On page 37, they complain that the reason the instructions were inappropriate is because it was the core of the case. All of the questions of the government directed to the witnesses had to do with the compulsion, the coercion, the beatings, the duress. All of the questions of the defense had to do with, did you do it of your own free will? Was it voluntary? Did you want to be there? Did anyone force you to be there? And then in closing, again, both counsel clearly and expressly said to the jury, we're only here for one reason, and that reason is, did this force cause the prostitution? So that should assure us from your point of view that there couldn't have been a constructive amendment because the jury was told to consider the conduct they heard at trial, consider the charge, and then the arguments of counsel corresponded with the charge. So there could be no amendment, right? Correct, Your Honor. I mean, a constructive amendment is broadening the scope of the indictment by permitting conviction for an uncharged offense. Here we have an indictment charging sex trafficking by force, force, fraud, or coercion causing a commercial sex act, and that is exactly what the defendant was found guilty of. That is what the court charged the jury with very explicitly, and that is what he was found guilty of. And does the verdict sheet help or hurt your argument, or does it have no impact on your argument? And I'm talking about the verdict sheet, not what the judge said about the verdict sheet. I don't think the verdict sheet had any impact. First of all, I think it's important to note that for each count, the first question on the verdict sheet was, did the defendant commit sex trafficking by force? So the jury had to agree on that before they even turned to the next question, and the next question was clearly labeled first element, and the court reiterated over and over again that it was talking about that first element when it asked them to break down between the means of effectuating the crime or benefiting financially from the crime, and then the court went on, I think, eight different times to talk about how the jury had to find the defendant guilty of each and every element of the offense. And frankly, if something is labeled first element, it's clear it's not only element. There are obviously other elements, and the jury was instructed in detail on all four of those elements. In terms of the sufficiency of the evidence, I think we've already touched upon that, and the thing that defense counsel is not focusing on is the standard, and that is the evidence in the light most favorable to the government. It is a highly deferential standard. It must be that any rational trier of fact could have found the defendant guilty, and even if conflicting inferences are supported by the facts, the court must assume that it was resolved in favor of the prosecution. Certainly, Talia did, contrary to what defense counsel said in response to Judge Roth's question. Talia did say, I felt stuck. I felt like I couldn't leave. I felt like the consequences would be worse of telling the police. What was going on, and going back to Justin, so it was better to lie to the police. I felt like I didn't have a choice at various points in time. Her testimony was not contradictory in that regard. Judge Roth, as you pointed out, Erica's testimony was contradictory in that regard. On direct examination on the first day, she laid out all of the abuse. On the second day, she claimed that an event involving Ivy never happened, and that she loved the defendant, and that she was there of her own choice. But I think it's important to note, she never said those beatings didn't happen. She said that the FBI forced her to talk about Justin Williams so that she wouldn't be arrested, but she did not testify that never happened to me. And I point blank asked her whether despite all of the beatings, despite all of the abuse, she still loved the defendant, and she said, yes, I love him. So the jury was reasonably able to look at that evidence and not draw the logical inference suggested by the defense that these women really wanted all their money taken away. They wanted to be brutally beaten and witness the beatings of others, and it was really enjoyable, and they liked being there. That's an absurd result, but rather very reasonably inferred, using their common sense, as they were instructed to do, that they didn't want to be there, that they didn't want their money taken away, and that beating was not enjoyable. And they were also properly instructed to consider the bias of the witness, which I think was exposed on cross-examination, that she was still in love with this person despite the physical abuse, and to consider the relationship between any witness and a party. And in this case, there was clearly a preexisting relationship. So for those reasons, it was an entirely reasonable inference for the jury to draw. And again, in the light most favorable to the government, certainly any rational trier fact could have concluded that the defendant used false-clarity coercion to cause a commercial sex act. Can we just go back to the jury instructions for one second before you move to the next subject? Certainly. You had said you're embracing plain error. That's the standard review we should apply. What if we were to conclude there was a sufficient effort to preserve the objection? Does this instruction survive? Is this instruction still harmless? It is, Your Honor. We have the court stating the causation within Element 4 itself would be caused, not would engage in a commercial sex act, would be caused to engage in a commercial sex act. We have the court explicitly discussing the causal connection when discussing the elements. We have the coercion definition, the substantial harm definition, and the language of the statute itself. Thank you. I'm not sure if the court would like me to address the remaining arguments, the Rule 412 or the obstruction issue. Judge Greenberg, do you have any further questions for counsel on any of the issues? I'm sorry. We'll be right back. Okay. Can we just hold the clock for a second? Okay. I don't have any questions. Okay. Thank you, Judge Roth. Thank you, Counsel for your argument. Thank you. Okay. Just a few quick points. I just want to direct the court to page 620 of the appendix where the judge actually does use the language would be engaged in a commercial sex act. So the two times that the elements were used, one of those times the word cause was taken out altogether. In response to the government's argument that the definitions of coercion and then embedded within that the definition of serious harm was sufficient to put forth a causal connection, that doesn't carry the day if the jury found that force was what caused the commercial sex act because we don't know that the jury found liability based on a permissible reading of the statute. If it was coercion and this court agrees that the coercion language in the statute embeds the causal language, it doesn't carry the force. And force was a big issue in the case, and I don't think that we can be satisfied that the jury in fact found the causal connection based on the language of a different part of the means of committing the offense. Because the causal connection was the core of the case, it means that if this court does find error, it must be reversed under either a harmless or a plain error standard. I just want to really turn quickly to the 412 issue because we were just discussing Erica's testimony about her love for the defendant. This is probative of the defendant's state of mind. Not just the fact that Erica was previously a prostitute, but that she was a prostitute for 10 years. This is an extremely long amount of time that she engaged in this activity and certainly discussions that she had with Mr. Williams about her life. And he testified about it. So on the 412 issue, it's not like the jury didn't know she had a prior history as being a prostitute. And she testified about it too. Right. She testified for one sentence and then was cut off by defense counsel based on the judge's ruling. And she didn't testify about anything of substance in relation to the prostitution, which would go to his state of mind about her behavior or her voluntariness as a prostitute. There are facts. But her testimony couldn't elucidate what his state of mind was. It's his state of mind. And what she believes about her choices in life and what she chooses to do does go to his state of mind. Right. And her testimony was, I did this voluntarily. That's what she testified to. So what more could counsel have made use of out of this 412? It's the evidence that really dealt with her prior acts of prostitution. If she had a prior prostitute relationship, what conditions she was living in before she met Mr. Williams, things about her life, details of her life. But even if it was also a circumstance, as the record here seems to describe, of brutal behavior between individuals, that doesn't make it excuse this behavior here. So how is this probative of anything? It doesn't excuse violent behavior. It doesn't mean that it was a causal connection. The episodic violence that characterized Mr. Williams' relationship with Erica was clear in the case, and his degradation and his temper. But that's not the question before this court on any of the issues presented here, which is whether he knew or recklessly disregarded that forced threats of force, fraud or coercion would be used to cause her to engage in a commercial sex act. The statute requires a more complex determination than what was presented before the court. And this was a witness that was extremely problematic. I mean, her testimony was completely different between direct examination and cross-examination. But the jury could believe one or the other, and we can't now say what they determined from what they heard. We can't say what they determined, but the question is did they believe. Her response to the question, was it voluntary? The answer, yes, to all of the other detailed facts that she discussed about the violence. We don't have any details about anything else except for the force and the prostitution. That was a temporal case that the government presented. 412 serves important reasons. They were not reasons that were at issue here. This was a witness that had a long-standing relationship with the client. Her mother testified this was her boyfriend. This was a witness that how Mr. Williams considered Erica would also impact how he considered other women. As problematic as it may be, the question is what he knew or recklessly disregarded about his behavior. And there's really no other way to rebut claims other than understanding his relationship with women. That's the inquiry before this court. And that was not asked, that was not permitted to be explored at all in his defense. Judge Greenberg, do you have any further questions of counsel? No, I don't need any more questions. Okay, thank you very much. Thank you both for a very large and brief case. We're going to take the matter under advisement.